F I L E D
Clerk
District Court
DEC 27 2023
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SUKESH CHANDRA BARMAN,<br><br>   Plaintiff,<br><br>v.<br><br>REBECCA MALIUWELUR, in her official capacity as Director of the Guam Field Office of USCIS, and the UNITED STATES OF AMERICA,<br><br>   Defendants. | Case No. 1:23-cv-00010<br><br>**MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

Defendants Rebecca Maliuwelur and the United States of America (collectively "Defendants") filed a motion to dismiss (Mot. Dismiss, ECF No. 5) Plaintiff Sukesh Chandra Barman's complaint (Compl., ECF No. 1) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Barman filed an opposition (Opp'n, ECF No. 6), to which Defendants replied (Reply, ECF No. 7). The matter came before the Court for a hearing on December 19, 2023, during which time the Court GRANTED the motion to dismiss. (Mins., ECF No. 12.) The Court now issues this memorandum decision detailing its rationale.

**I.   FACTUAL BACKGROUND**

In 1976, Congress approved the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant"); as a result, citizens of the Commonwealth of the Northern Mariana Islands ("CNMI") became citizens of the United States. *Eche v. Holder*, 694 F.3d 1026, 1027 (9th Cir. 2012) (citing Covenant, Pub. L. No. 94–241, § 301, 90 Stat. 263, 265–66). Notably, the CNMI government "retained nearly exclusive control over immigration to

the territory." *Id.* (citing Covenant § 503(a)). In 2009, the Consolidated Natural Resources Act of 2008 ("CNRA"), Pub. L. No. 110–229, 122 Stat. 754 (2008), was approved by Congress and started the process to "ma[k]e federal immigration law applicable to the CNMI." *Id.* (first citing 48 U.S.C. § 1806(a)(1); and then citing Commonwealth of the Northern Mariana Islands Transitional Worker Classification, 74 Fed. Reg. 55094 (Oct. 27, 2009)). The CNRA made certain provisions of the Immigration and Naturalization Act ("INA") applicable to the CNMI. 48 U.S.C. § 1806(a)(1). However, as explained by the CNMI's sole representative in the United States Congress, Congressman Gregorio Kilili Sablan, to the House of Representatives during the discussion of H.R. 559, a certain class of people, long-term residents, "were not taken into account when Federal immigration was extended to [the CNMI]." 165 Cong. Rec. 4202 (2019). He explained that "[d]uring the Obama administration, they were granted humanitarian parole that allowed them to stay" but the Trump administration refused to grant parole to "categories of people, as had been done in the Marianas. As a result, 1,039 long-term residents of [the CNMI] lost their parole status last December. They were given until June 29 to adjust status or leave." *Id.* But the Trump administration nevertheless "recognized that these long-term residents should be allowed to stay in the Marianas" and thus "drafted legislation giving these people permanent status in the Marianas, and just in the Marianas, so they could continue to live and work as they have for years as part of [the] community." *Id.* at 4202-03.

In June 2019, President Donald Trump signed H.R. 559 into law which became the Northern Mariana Islands Long-Term Legal Residents Relief Act ("Relief Act"). Pub. L. 116-24, 133 Stat. 977 (2019). It amended the Covenant by inserting a special provision to create a CNMI Long-Term Resident Status for long-term alien residents who have been lawfully present in the CNMI since November 28, 2009, to allow them to lawfully remain in the CNMI. 48 U.S.C. § 1806(e)(6). The Relief Act granted the Secretary of Homeland Security ("the Secretary") the duty to establish an application process and the discretion to authorize deferred action or parole. 48 U.S.C. § 1806(e)(6)(A)(ii). The Act also granted

the Secretary discretion to establish procedures for advance parole, and to authorize transit of aliens with CNMI Resident status through Guam to a foreign place. 48 U.S.C. § 1806(e)(6)(A)(iv). Of note, this statute proscribes judicial review of the Secretary's decision; specifically, it provides that

> [n]otwithstanding any other law, no court shall have jurisdiction to review any decision of the Secretary of Homeland Security or the Attorney General on an application under this paragraph or any other action or determination of the Secretary of Homeland Security or the Attorney General to implement, administer, or enforce this paragraph.

48 U.S.C. § 1806(e)(6)(D).

Barman asserts that he met "all the criteria of eligibility for NM-1 status set forth in the Relief Act" and applied for NM-1 status on April 29, 2020. (Compl. ¶¶ 10-11.) But Defendant Maliuwelur, Director of the Guam Field Office of U.S. Citizenship and Immigration Services ("USCIS"), of the U.S. Department of Homeland Security ("DHS") denied Barman's application on December 30, 2021. (*Id.* ¶¶ 4, 13.) In March 2022, Barman sought reconsideration of the denial, which Director Maliuwelur also denied. (*Id.* ¶¶ 14-15.) Thereafter, Barman filed the instant lawsuit seeking "[a] declaration that his application for NM-1 status met all the statutory criteria of eligibility for such status set forth in the Relief Act" and "[a] mandatory injunction requiring Defendants to approve his application, grant him NM-1 statu[s], and issue to [] him all appropriate documentation evidencing such status." (Compl. 4.)

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction empowered to hear only those cases authorized by the Constitution or by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a case if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The presumption is "that a cause lies outside this limited jurisdiction," and the party asserting jurisdiction has the burden of establishing the contrary. *Kokkonen*, 511 U.S. at 377 (citations omitted).

### B. Facial and Factual Attacks on Subject Matter Jurisdiction

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) motions are either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack does not challenge the veracity of the plaintiff's allegations, but instead asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* Conversely, a defendant bringing a factual attack disputes the truthfulness of the allegations underlying federal jurisdiction. *Id.*

When considering a facial challenge to subject matter jurisdiction, all factual allegations in the complaint "are taken as true and all reasonable inferences are drawn in [the plaintiff's] favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013) (citations omitted). In contrast, for factual challenges, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. Courts may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Once the moving party has presented affidavits or other evidence for its factual motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (citation omitted).

## III. DISCUSSION

Defendants filed a motion to dismiss facially attacking the complaint and asserting this Court lacks subject matter jurisdiction because "the granting of NM-1 Commonwealth of the Northern Mariana Islands (CNMI) long-term resident status pursuant to 48 U.S.C. § 1806(e)(6) is expressly divested from judicial review pursuant to 48 U.S.C. § 1806(e)(6)(D)." (Mot. 2.) Although Barman concedes that § 1806(e)(6) precludes judicial review of decisions regarding NM-1 status, he contends this preclusion does not apply to the rejections of his application because the preclusion is limited to decisions made by the Secretary of Homeland Security or the Attorney General of the U.S. Department

4

of Justice, and neither official denied his application, rather the Guam Field Office Director for USCIS, a subordinate official in DHS, did. (*See* Opp'n 2.) Further, Barman maintains that subdelegation of the Secretary's duties is improper as the statutory purpose of the Relief Act "does not require or favor subdelegation." (*Id.* at 7.) Based on the Court's review of the Relief Act, and the applicable statutes and regulation governing the Secretary's authority to delegate his authority, the Court concludes that the Secretary's subdelegation over adjudicating NM-1 applications is proper; as such, the Relief Act's preclusion of judicial review over such decisions applies to Director Maliuwelur's denial of Barman's application.

As Defendants explain, the Secretary's "delegation of authority to the Guam Field Office Director for USCIS is made pursuant to Department of Homeland Security, Delegation Number: 0150.1 (June 5, 2003) ("Delegation"), specifically paragraphs H, R and BB," which is authorized by 6 U.S.C. §§ 112(b)(1), 455; 8 U.S.C. § 1103(a)(4); and 8 C.F.R. § 2.1. (Reply 2.) Defendants argue that the adjudication decision made by the Secretary's delegate is also an action or determination by the Secretary that is judicially unreviewable. (*Id.*) This Court agrees.

DHS Delegation Number: 0150.1, Section II provides:

> Pursuant to the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002, I hereby delegate to the Bureau of Citizenship and Immigration Services: . . .
>
> H. Authority under section 103(a)(1) of the Immigration and Nationality Act of 1952, as amended (INA), 8 U.S.C. §1103(a)(1), to administer the immigration laws (as defined in section 101(a)(17) of the INA). . . .
>
> R. Authority to grant employment authorization under sections 214(a) or 274A(h)(3) of the INA (8 U.S.C. §§1184(a) and 1324A(h)(3)), 8 C.F.R. §274a.13, or other applicable law.
>
> BB. Authority under the immigration laws to accept, process and adjudicate any application for any immigration benefit or service not exclusively under the jurisdiction of the EOIR, ICE or CBP, including but not limited to the authority to approve, deny, transfer, revoke, rescind, or certify all existing and future immigration, naturalization and citizenship benefits. . . .

This Delegation has been in effect for over twenty years now, shortly after DHS was established after the September 11, 2001 terrorist attacks, and there is no evidence that the Delegation was rescinded. Congress expressly authorized the Secretary to delegate his authority when it passed the Homeland Security Act of 2002 ("Homeland Security Act"). The Homeland Security Act provides as follows: "The Secretary [of Homeland Security] -- (1) except otherwise provided by this chapter, may delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department." 6 U.S.C. § 112(b)(1). It further details that "[u]nless otherwise provided in the delegation or by law, any function delegated under this chapter may be redelegated to any subordinate." 6 U.S.C. § 455(c). Under the Immigration and Nationality Act ("INA"), the Secretary of Homeland Security "may require or authorize any employee of the Service or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon any other employee of the Service." 8 U.S.C. § 1103(a)(4). The INA's corresponding regulations, specifically 8 C.F.R. § 2.1, dictate that:

> The Secretary of Homeland Security may, in the Secretary's discretion, delegate any such authority or function to any official, officer, or employee of the Department of Homeland Security, including delegation through successive redelegation, or to any employee of the United States to the extent authorized by law. Such delegation may be made by regulation, directive, memorandum, or other means as deemed appropriate by the Secretary in the exercise of the Secretary's discretion.

The issue here is the most recent amendment to the Covenant, the Relief Act. The Relief Act, as well as the entire Covenant, do not have an express authority for the Secretary to delegate his authority.[1] Generally, express statutory authority for delegation to subordinates is not required. *Frankl v. HTH Corp.*, 650 F.3d 1334, 1350 (9th Cir. 2011) (citation omitted). There is a "general presumption that delegations to subordinates are permissible in cases of statutory silence." *Id.* However, to determine the

---

[1] The CNRA expressly directed the Secretary of Homeland Security to consult with the Secretary of State, Secretary of Interior, and Secretary of Labor to *assign* their duties, not delegate their duties, as needed to implement the CNRA's federalization of the CNMI's immigration laws. 48 U.S.C. § 1806(a)(5).

6

applicability of the presumption, a court "must look to the purpose of the statute to set its parameters" when there is no express congressional authorization for a subdelegation. *Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 702 (9th Cir. 1996) (quoting *Assiniboine & Sioux Tribes v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 795 (9th Cir. 1986)). "[D]elegation generally is permitted where it is not inconsistent with the statute." *Id.* (citations omitted). Conversely, subdelegation is prohibited if doing so would frustrate the purpose of the statute. *See Assiniboine & Sioux Tribes*, 792 F.2d at 794.

In *Assiniboine & Sioux Tribes*, the Ninth Circuit concluded that the U.S. Secretary of the Interior's delegation of authority for applications of oil and gas wells to the Montana Board of Oil and Gas Conservation was improper. *Id.* at 785. The "statutory and regulatory scheme . . . to achieve uniformity in tribal leasing matters; to increase Indian authority in granting leases; and to protect the Indians' economic return on their property," were undermined by the subdelegation to an entirely different entity, especially since the United States was entrusted as a fiduciary to the tribes and "held to strict standards and is required to exercise the greatest care in administering its trust obligations." *Id.* at 794-96 (citations omitted).

Similarly, in *Crawford-Hall v. United States*, the district court concluded that subdelegation of the Assistant Secretary of Bureau of Indian Affairs' ability to decide appeals to the Principal Deputy of Bureau of Indian Affairs was prohibited as the language of the regulations provided affirmative evidence of an intent to restrict subdelegation. 394 F. Supp. 3d 1122, 1137-38 (C.D. Cal. 2019). In reaching this conclusion, the district court observed that a plain reading of the regulations permits only the Assistant Secretary to issue final decisions on appeals. *Id.* at 1137.

Here, because there is no express language within the Relief Act authorizing or prohibiting subdelegation of the Secretary of Homeland Security's authority under the Homeland Security Act and

//
//

the INA and their regulations already in effect authorizing subdelegation, there is a presumption that the Secretary can subdelegate so long as the subdelegation would not be inconsistent with the Relief Act. As demonstrated by the Congressional Record, the purpose of the Relief Act was to provide long-term residents of the CNMI with permanent status solely in the CNMI so that they can "continue to live and work as they have for years as part of [the] community." 165 Cong. Rec. 4202-03. Director Maliuwelur, as opposed to the Secretary, adjudicating such applications would not frustrate the purpose of providing permanent status to long-term residents of the CNMI. Unlike the subdelegation in *Assiniboine & Sioux Tribes* between the federal government, who had a heightened fiduciary duty to the tribes, and the Montana state government that was prohibited, the subdelegation here is within one agency: from the Secretary of Homeland Security to a Director within USCIS. Additionally, there is not affirmative evidence of an intent to restrict subdelegation in the Relief Act, in contrast to the clear intent to prohibit subdelegation in *Crawford-Hall*.

Another district court has similarly found delegation of the Secretary of Homeland Security's duties to USCIS permissible such that a statute's preclusion of the Secretary's decisions from judicial review also applied to USCIS's decisions. *See Taleb v. Mayorkas*, No. CV 22-10409, 2023 WL 1928558, at *3 (E.D. Mich. Feb. 10, 2023). In *Taleb*, the district court recognized that, in the INA, "Congress granted the Secretary of Homeland Security (or USCIS as a delegate) discretion to decide whether to adjust the status of a petitioner, and that the INA insulates from judicial review 'any decision or action of ... the Secretary of Homeland Security the authority for which is specified ... to be in the [Secretary's] discretion[.]" *Id.* (quoting *Singh v. Dedvukaj*, No. 09-13252, 2010 WL 2089380, at *3-4 (E.D. Mich. May 24, 2010)). Accordingly, the district court "conclude[d] that USCIS's decision to deny Plaintiff's application for adjustment of status, including the factual findings on which that decision is based, are not subject to judicial review." *Id.* Just as the district court in *Taleb* found that USCIS's

decision was not subject to judicial review, this Court similarly concludes that Director Maliuwelur's decisions over Barman's application is not subject to judicial review.

Barman argues that even assuming the presumption of subdelegation applies, it does not "prevail over the countervailing presumption of judicial review." (Opp'n 7.) A principle of statutory construction is that there is a "presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). However, principles of statutory construction, including the presumption of judicial review over administrative action, only apply "[w]hen a statute is 'reasonably susceptible to divergent interpretation." *Id.* (citation omitted); *see also Woods v. Carey*, 722 F.3d 1177, 1180-81 (9th Cir. 2013) (when a "statute's terms are ambiguous, [however,] we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." (citation omitted)). Here, the Court need not even resort to the presumption of judicial review because the Relief Act's preclusion of judicial review, even over decisions that were subdelegated, is indisputable; it precludes judicial review of any decision of the Secretary "on an application under this paragraph or any other action or determination of the Secretary … to implement, administer, or enforce this paragraph." The Court rejects Barman's arguments to the contrary as illogical and an unreasonable interpretation of the statute.

**IV. CONCLUSION**

The 2019 Relief Act was enacted by Congress to give relief to the small finite number of aliens living in the CNMI "who fell through the cracks" when the 2009 CNRA was passed. 165 Cong. Rec. 4202. In doing so, Congress precluded judicial review of decisions by the Secretary of Homeland Security over applications submitted pursuant to the Relief Act. Although the decision denying Barman's petition was rendered by USCIS Field Director Maliuwelur and not the Secretary, the authority was delegated by a memorandum and authorized by statutes and regulation, and a preclusion against judicial review of the Secretary's decision is a preclusion against one made by his designee.

Accordingly, Defendants' motion to dismiss is GRANTED. The action is dismissed with prejudice and the Clerk is directed to close this case.

IT IS SO ORDERED this 27th day of December 2023.

_____
RAMONA V. MANGLONA
Chief Judge